## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| _____ ) | | |
| PrimoHoagies Franchising, Inc., ) | | |
| *Plaintiff*, ) | Civil No. 19-21854 (RBK-JS) | |
| v. ) | **Opinion** | |
| J.G. Primo, LLC, Greg Sutor, and Jesse Nutter ) | | |
| ) | | |
| *Defendants*. ) | | |
| _____ ) | | |

**KUGLER**, United States District Court Judge

   **BEFORE THE COURT IS THE MOTION** ["the Motion"] (ECF Doc. 15) of plaintiff PrimoHoagies Franchising, LLC ["Primo" or "plaintiff"} for default judgment against defendant Greg Sutor ["Sutor" or "defendant"] pursuant to Fed. R. Civ. P. ["or Rule"] 55(b)(2).  The complaint (ECF Doc. 1) pleads three counts: breach of a franchise agreement ["the Agreement"], breach of the non-compete clause in the Agreement; and trademark infringement and unfair competition for defendant's continued use of plaintiff's registered mark(s) after termination of the Agreement.

   Consequently, in the Motion, plaintiff seeks:  preliminary and permanent injunction against the use of plaintiff's trademarks; an accounting of and judgment for the profits to which plaintiff is entitled; treble damages under the Lanham Act, 15 U.S.C. §1117, and attorneys' fees and costs in pursuing the Motion.

   Defendant has filed neither an answer nor an opposition to the Motion.

   **THE COURT GRANTS** the Motion for default judgment against Sutor, **and ORDERS a hearing** at which the parties will present an accounting of remedies and damages to be awarded.

   An appropriate Order of this date accompanies this Opinion.


1.0    **Facts and Procedural History**

   According to plaintiff's complaint (ECF Doc. 1), on Aug 2018, plaintiff as franchisor and

franchisee J.G Primo LLC ["JG"] (owned by Jesse Nutter and Greg Sutor) executed a franchise agreement ["the Agreement"] whereby JG undertook to operate a PrimoHoagies® franchise at 1313 West Boynton Beach Boulevard, Boynton Beach, Florida 33426, for a term of five years. Nutter and Sutor each agreed to be individual guarantors for the JG franchisee and to pay any amounts due under the Agreement owed by JG.

The Agreement 7.15 required JG operate the franchised business in strict conformity with methods, standards, and specifications detailed in the PrimoHoagies® Operation Manual ["the Manual"], which required, among other things, maintenance of certain health standards, the use of certain, approved products and the sale of certain menu items. At §3.4, the Agreement permitted the franchisor to conduct periodic inspections of the franchised business either with or without notice. The Agreement also included JG's right to use the franchisor-registered marks for Primo Hoagies, which license would cease immediately upon termination or expiration of the Agreement. The Agreement at §17.3 also contained a non-compete clause that prohibited JG from owning, operating, maintaining, being employed by, or helping any competing deli or sandwich shop for two years after the termination of the Agreement.

Further, if the Agreement were terminated prior to expiration, then according to §16.7, JG and Sutor and Nutter as JG Guarantors agreed to pay plaintiff a monthly fee for the lesser of 3 years or the number of months remaining in the term of the Agreement. The amount of the monthly fee would be the average of the combined royalty and advertising fee paid by JG for the twelve months preceding early termination.

On 20 Dec 2019, the franchisor caused an inspection of the JG premises by its inspection agent who found multiple instances of non-compliance with the methods, standards, and specifications set forth in the Manual. Before the inspection was completed, JG asked the agent to vacate the JG premises, which the Agreement state at §7.7 is a material breach. Accordingly, on that day, plaintiff notified JG, Sutor, and Nutter in writing that the Agreement was terminated without an opportunity to cure. Plaintiffs reports that as of 23 Dec 2019, JG continued to operate the business as if it were a PrimoHoagies® deli-sandwich franchise.

On 23 Dec 2019, plaintiff filed this action. pleading breach of the Agreement and breach of the Agreement's non-compete clause inasmuch as Sutor continues to operate the deli-sandwich business within two years of the termination of the Agreement. Plaintiff also pleads trademark infringement because the JG business continues to use plaintiff's registered marks in the store front signage and other signs and items of the deli-sandwich business.

On 10 Jan 2020, Sutor was served in person a copy of the summons and complaint

according to the process server's return of service document (ECF Doc. No. 4).  As for service on defendants JG and Jesse Nutter, the process server made at least four attempts to serve them in person.  According to the affidavit of plaintiff's attorney (ECF Doc. 5) the process server resorted to mailing the summons and complaint to Nutter's last known address pursuant to Rule 4.

None of the defendants filed an answer pursuant to Rule 12(a)(i).  On 10 Feb 2020, plaintiff requested the Clerk of the Court to order a default as to JG, Greg Sutor, and Jesse Nutter (ECF Doc. 6).   On 14 Feb 2020, the Clerk issued a default as to Sutor.   On 19 Feb 20, Nutter's attorney made an appearance in this matter (ECF Doc. 8), and in ECF Doc. 9, Magistrate Judge Schneider ordered Nutter to answer the complaint by 23 Mar 20, which he did in ECF Doc. 13.  On 23 Mar 20, plaintiff filed this motion, seeking a default judgment against Sutor as well as the following remedies and damages:

Permanent injunctive relief to enjoin further use of plaintiff's trademarks;

An accounting of and judgment for the profits to which plaintiff is entitled;

Sutor's disgorgement of profits and treble damages resulting from the trademark infringement; and

Attorney's fees and costs in pursuing this action.


## 2.0    Legal Standard of Review

Fed. R. Civ. Proc. 55(b)(2) authorizes federal courts, upon plaintiff's motion, to enter a default judgment against a properly served defendant who fails to plead or otherwise timely defend against a claim for affirmative relief.  If a defendant is in default of prosecuting the case, the Court accepts as true all of plaintiff's well-pleaded factual allegations in the complaint. *Comdyne I, Inc. v Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The Court, however, does not accept plaintiff's legal conclusions as it's the Court that determines whether the pleaded facts set forth an actionable claim (*Doe v. Simone*, No. 12–5825, 2013 WL 3772532, at *2 (D.N.J. 17 July 2013)).  Nor does the Court accept plaintiff's allegations concerning damages. *Id.* [*citing* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE §2688, at 58-59 (3d ed. 1998 and Supp. 2013).

The "decision to enter default judgment rests within the sound 'discretion of the district court' (*Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 683 (D.N.J. 2015) [*citing Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  The Third Circuit's repeatedly stated preference is that "cases be disposed of on the merits whenever practicable".  *Hritz*, 732 F.2d at 1181.

### 3.0    Default Judgment Discussion

### 3.1    Jurisdiction

As this action pleads trademark infringement and unfair competition under the Lanham Act, 15 USC §1051 *et seq.*, the Court has subject matter jurisdiction under 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338 (b). The Court also has pendent jurisdiction over the state law claims for breach of the Agreement and of the non-compete clause because both state and federal claims **"**derive from a common nucleus of operative fact" and "are such that plaintiff would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See also Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 484 (3d Cir. 1979) *stating* "[c]onstitutional power to adjudicate a pendent claim [in a default context] is ordinarily to be determined by reference to the pleadings, not on the facts as they may eventually be established [citations omitted]."

The Court has jurisdiction over Greg Sutor because, in the Agreement at §26.5, Sutor irrevocably consented to personal jurisdiction in the state and federal courts of New Jersey.[1]

### 3.2    Entry of Default

The Court must ensure the entry of default was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when that party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Here, the Clerk appropriately issued entry of default under Rule 55(a) on 14 February 2020 for Sutor's failure to answer within the time limit of Rule 12(a)(i).

### 3.3    Fitness of Defendants to be Subject to Default Judgment

The Court must also confirm that the defaulting parties are not infants, incompetent persons, or persons in military service exempted from default judgment.  *Fed. R. Civ. Proc.* 55(b)(2).  In its request for default (ECF Doc. 6: ¶¶4-5), plaintiff attested that Sutor was neither an infant nor incompetent to comprehend the Franchise Agreement nor in the military service

---

[1] In addition, this Court has specific, personal jurisdiction over Sutor because the New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process" (*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) [*citing DeJames v. Magnificence Carrier, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981)]) when the cause of action arises from defendant's activities that took place in New Jersey. *Powerhouse Equipment & Engineering Co., Inc.  v. Power Mechanical, Inc. et al.*, No. 18-10744, 2019 WL 3334758, at *2 (D.N.J. 25 Jul 2019) *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).  Here, Sutor's breach of the Agreement arises from his failure to pay the required franchise termination fees to plaintiff, the delivery and receipt of which would occur in New Jersey.

when the Agreement was executed and allegedly breached on 20 Dec 2019 (ECF Doc. 1: ¶¶24-28).  The Court finds that Sutor is subject to default judgment under Rule 55(b)(2).

### 3.4    Properly Pleaded Causes of Action Against Defendants

To award a default judgment, the Court must determine whether the complaint states proper causes of action against defendants.  In doing so, the Court accepts as true plaintiff's well-pleaded fact allegations and disregards its pleaded legal conclusions.  *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. 14 March 2006) [*citing* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 58-59 (3ed. 1998)].

#### 3.4.1   Federal Trademark Infringement

Federal trademark infringement and unfair competition are measured by the same standard, that is: a mark used in commerce is likely to cause confusion because of its similarity to a mark already registered before the U.S. Patent and Trademark Office ["USPTO"].[2] *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir. 1999).

To prevail on its trademark infringement and unfair competition claim, the plaintiff must prove three elements:  1) its ownership of the PrimoHoagies® marks, which are 2) valid and legally protectable, and 3) defendants' use of those marks is likely to create confusion.  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210–11 (3d Cir.2000). To establish elements 1) and 2), a USPTO-issued trademark registration suffices.  *E.A. Sween Co., Inc. v. Deli Exp. Of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D. N.J. 2014).  Here, plaintiff pleaded it owns three registrations of its PrimoHoagie® marks.  ECF Doc 1: ¶10.  Further, the Court

---

[2] 35 U.S.C. §1114(1) of the Lanham Act sets forth the standard of trademark infringement.  See emphasis below.

*Any person who shall, without the consent of the registrant—*

*(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection* with which *such use **is likely to cause confusion,** or to cause mistake, or to deceive; … shall be liable in a civil action by the registrant….*

And, 15 U.S.C. § 1125(a)(1) of the Lanham Act sets forth the same standard for unfair competition claims:

*Any person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device … or any false designation of origin … which—*

*(A) is **likely to cause confusion**, or to cause mistake, or to deceive as to … the origin, sponsorship, or approval of [his or her] goods, services, or commerci333al activities by another person … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

observes from USPTO records that the marks are unchallenged, the required renewal registrations have been duly paid, and the registered classes of the marks cover the products and services licensed to Sutor. On their face, the marks appear valid; and thus, the first two elements are satisfied.

Element 3—the use of confusingly similar marks--is shown when ordinary consumers are likely to conclude the marks used in commerce by defendants and plaintiff's registered marks identify a common source, affiliation, connection or sponsorship. *A & H Sportswear, Inc.*, 237 F.3d at 216 [*quoting Fisons Horticulture v. Vigoro Indus.*, 30 F.3d 466, 477 (3d. Cir. 1994)]. Although the Third Circuit has set forth a 10-factor framework for courts to analyze confusingly similar marks,[3] when the mark owner and the alleged infringer sell similar goods or services, the court need rarely look beyond the marks themselves. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d. Cir. 1983). That is, when the goods sold are similar or exactly the same as the mark owner's goods, as is the case here, analysis narrows to observing the extent of similarity between the registered and allegedly infringing marks. *E.A. Sween Co.*, 19 F.Supp.3d at 569.

Here, plaintiff pleaded Sutor continues to use plaintiff's marks without any or substantial alteration after the Agreement termination and that Sutor had license to use the marks so long as the Agreement was in force. Thus, since the complaint pleads continued use of plaintiff's marks for which Sutor no longer has permission and that such continued use will cause likelihood of confusion by the public as to whether Sutor's establishment is a source for Primo Hoagies, the complaint properly pleads trademark infringement.

### 3.4.2   Breach of New Jersey Contract Law

Plaintiff's complaint at Count 1 pleads that Sutor breached a material term of the Agreement by not complying with Primo Hoagies' methods, standards and specifications set forth in Primo Hoagies' Operation Manual, which was incorporated into the Agreement at §7.3. Moreover, since the Agreement §17.3 prohibits Sutor from engaging in a sandwich retail business for two years after franchise termination, the complaint at Count II pleads Sutor's breach of that term, specifically because of Sutor's continued operation of the retail business

---

[3] *A & H Sportswear, Inc.*, 237 F.3d at 212:  "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market."

after franchise termination as if it if it were a PrimoHoagies® restaurant.

Even though Agreement §9 states that it shall be construed under the laws of New Jersey, the breach of contract and of non-competition clause can implicate ONLY New Jersey common law, and not the New Jersey Franchise Practices Act, 56 N.J.S.A 10 *et seq.* (Current with laws through L.2020, c. 37) ["NJFPA"].  The NJFPA does not apply to franchisees or their business locations outside of New Jersey.[4]

Under New Jersey common law, "...to prove a claim for breach of contract, a plaintiff must demonstrate that a valid contract existed and that the defendant failed to perform under the contract causing injury." *Red Roof Franchising, LLC v. AA Hospitality North Shore*, LLC, 877 F.Supp.2d 140 (D.N.J. 2012) (Hillman, J) [in a franchise context] *citing Murphy v. Implicito,* 392 N.J. Super. 245, 920 A.2d 678, 689 (App.Div.2007) ["To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result."].

In the complaint, plaintiff pleaded  1) the existence of a franchise agreement executed with Greg Sutor; 2) Sutor's failure to perform material requirements under the Agreement, especially, to maintain a standard of cleanliness in the JG franchise and to use only approved sandwich components as mandated by the Manual incorporated into the Agreement; and 3) because of 1) and 2), injury to its franchising business, especially loss of trade secrets, goodwill, and reputation due to defendant's continued operation of a competing business and trademark infringement.  The Court finds plaintiff has properly pleaded a breach of contract claim and a breach of non-competition clause under New Jersey common law.

## 4.0    Conclusion

Having established this Court's personal jurisdiction over the defendant and over the subject matter of the Motion, and that defendant is fit to be declared in default in this action, and that plaintiff has pleaded the proper elements of the counts alleged in the complaint, the

---

[4] **56:10-4. Franchises to which act applicable**

This act applies only:

      a. to a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise; or

      b. to a franchise for the sale of new motor vehicles as defined in R.S.39:10-2, the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey.

Court hereby grants default judgment pursuant to Rule 55(b)(2) against defendant Greg Sutor for his non-appearance in this matter, to wit, neither answering plaintiff's complaint (ECF Doc. 1) nor opposing this Motion (ECF Doc. 15).

As for the remedies and damages plaintiff has requested, the Court issues an accompanying Order requiring the parties to attend a hearing as detailed in the Order, to present arguments;

why a permanent injunction should or not issue enjoining Sutor's use of plaintiff's trademarks; an accounting of and judgment for the profits to which plaintiff may be entitled; why treble damages under the Lanham Act, 15 U.S.C. §1117 should be ordered, and whether attorneys' fees and costs in pursuing the Motion should be granted.

Dated:  29 June 2020                                    s/Robert B. Kugler

                                                         ROBERT B. KUGLER

                                                         United States District Judge